UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:20-cr-292-VMC-CPT

ROBERTO SANTANA JIMENEZ

**UNITED STATES' SENTENCING MEMORANDUM**

The United States files this sentencing memorandum requesting that this Court sentence defendant Roberto Santana Jimenez to a term of imprisonment within his advisory guideline range followed by the maximum term of supervised release. In support thereof, the government states as follows:

**I.  Background**

**a.  Offense Conduct**

When co-defendant Jordan Jysae Pulido was 23 years old, he met the then 14-year-old child victim ("the child victim"), who resided in Croatia, online. They communicated via various social media platforms, and they eventually became romantically involved. Pulido and the child victim would engage in video chats, during which they would see each other masturbate, which they referred to as "pillow talk."

Eventually, Pulido traveled from his residence in Trinity, Florida, to stay

with the child victim and her family in Croatia for approximately six weeks. While there, on the child victim's fifteenth birthday, Pulido had sex with the child victim and asked her to marry him. Pulido and his father, defendant Roberto Santana Jimenez, arranged for the child victim and her family to travel to their residence in the Middle District of Florida, purportedly to thank them for taking in Pulido during his trip to Croatia. While at the defendants' home, Pulido and the child victim continued having sex.

Although the child victim was supposed to return to Croatia with her family, on the morning of her return flight, she and Pulido left the residence so that she would miss the flight. Jimenez persuaded the child victim's family to travel back to Croatia without the child, warning the child's mother that there could be adverse law enforcement consequences if she went to the police.

Upon the family's arrival in Croatia, the child victim's mother received a distress text message from the child victim indicating that she wanted to return home but that the defendants were preventing her from doing so. The mother contacted Croatian law enforcement officers. Upon learning about the situation, Florida law enforcement recovered the child victim from the defendants' home. The next day, Pulido fled to Mexico, returning about a month later after a family member advised him that it was safe to return.

### b. Procedural History

On September 24, 2020, Jimenez a federal grand jury returned a four-count indictment, charging Jimenez with one count of conspiring to transport a minor with intent to engage in sexual activity, in violation of 18 U.S.C. § 2423(a) and (e). Doc. 1. On October 18, 2021, Jimenez proceeded to trial. Doc. 176. On October 28, 2021, a federal jury found Jimenez guilty as charged. Doc. 196. Jimenez's sentencing is scheduled for February 23, 2022. Doc. 236.

### II. Presentence Investigation Report

On February 16, 2022, probation issued its Final Presentence Investigation Report ("PSR") as to the defendant. Doc. 239. Pursuant to the PSR, Jimenez's applicable Guidelines range for the underlying offense is life with a mandatory minimum of 10 years imprisonment. *Id*. at ¶¶ 119, 120.; he has a criminal history category of I; and the applicable period of supervised release is not less than five years up to life. *Id*. at ¶ 122. Defense counsel has set forth legal objections to the information stated in the PSR. *Id*. at 49-53. The United States agrees with U.S. Probation Office's guidelines calculation and analysis outlined in the addendum to the PSR.

### III. Argument for a Guidelines Sentence

A Guidelines sentence is necessary due to the nature and circumstances of the offense, and for both deterrence of these crimes and for the protection of

the public against the defendant. *See* 18 U.S.C. § 3553(a). The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). A consideration of these factors warrants a Guideline sentence.

### a. Nature and Circumstances of the Offense

Jimenez, a then 59-year-old man, encouraged and aided his then 23-year-old son, Jordan Jysae Pulido, to engage in a sexual relationship with a then 14-year-old Croatian child. The evidence presented at trial showed that Jimenez played an instrumental role in making the long-distance internet relationship a real-life, in-person sexual relationship. Early in their communications, Pulido, with Jimenez's help, engaged in "pillow talk" as a method to groom the child victim for sexual activity when they met in Croatia. Jimenez played an active role in the enticement. He even asked Pulido if the child victim had been able to achieve an orgasm. *See* Gov. Trial Exh. 30G. To which defendant Pulido responded he would have to "finish things in person." *Id*. Jimenez frequently advised Pulido on how to further his sexual relationship with the victim and even inserted himself in conversations with the child victim. The child victim testified, which was testimony was corroborated through text messages between Jimenez and Pulido, that Jimenez offered advice on when to engage in sexual intercourse to avoid pregnancy.

Jimenez conspired with Pulido, and other unindicted family members, to coordinate Pulido's travel to Croatia and the victim's travel from Croatia to his residence in Trinity, Florida. The evidence showed that Jimenez manipulated the child victim and her family members, concocting a plan to have the child

victim miss her scheduled flight back to Croatia, seek asylum, and reside in Florida with Pulido as his child bride. Regardless of Jimenez's cultural background, he knew the victim was a minor and knew that any relationship between his adult son, Pulido, and the child victim was illegal in the United States. Despite knowing this, Jimenez encouraged and facilitated the sexual relationship between Pulido and the child victim, and he conspired with Pulido to fly the child victim from Croatia to the United States to further their sexual relationship.

### b. History and Characteristics of the Defendant

Jimenez is an illegal alien unlawfully present in the United States. He traveled to the United States lawfully under a B-2 Visa in April 1987 and never left the United States when he his Visa expired. Apart from his illegal presence in the United States and the instant offense conduct, Jimenez otherwise has an unremarkable criminal history.

Jimenez is 62 years old and appears to be in remission from cancer, though he may have other ongoing health concerns. His advanced age and current health status, however, do not warrant a downward departure or variance from the Guidelines range.

### c. Need to Promote Respect for the Law and Need for Deterrence, Protect the Public from Further Crimes of the Defendant, and Provide Just Punishment

The need for the sentence imposed in this case to promote respect for the law and to provide adequate deterrence to criminal conduct is significant. Jimenez did not have a solitary lapse in judgment. Over a course of months, Jimenez coached his son on how to manipulate the child victim into a sexual relationship. He then helped his son bring the internet-based relationship to real life by facilitating Pulido's travel to and from Croatia. He purchased airline tickets for the child victim, knowing that he had intent on letting the child victim return to Croatia with her family. Instead, Jimenez planned to have the child victim remain in the United States and continue in a morally and legally abhorrent relationship with a grown man. Jimenez's role in the offense conduct is evidence of the need to protect the public and provide just punishment. Accordingly, there is a strong need to impose a severe sentence that will serve as a warning to Jimenez and individuals considering similar conduct. A lengthy sentence will deter comparable activities and convey that such behavior is unacceptable and will be adjudicated harshly within the Eleventh Circuit.

Moreover, there is a need to protect the public from further crimes of the defendant. Jimenez maintains that his efforts to marry off his 23-year-old son off to a 14-year-old child is similar to his own personal relationship with his wife. At trial, and now at sentencing, Jimenez offer's this explanation for his criminal acts. What Jimenez fails to understand is that in this country, when a

23-year-old engages in illicit sexual conduct with a 14-year-old, it's called rape. Jimenez does not accept or care to understand the gravity of his conduct; he simply tries to explain it away as a cultural difference. By refusing to accept that his conduct is in fact reprehensible and unlawful, Jimenez has volunteered to illustrate the repercussions for behavior a civilized society deems unacceptable.

## IV. Conclusion

Jimenez's sentence should fairly account for the scope of his criminal endeavors, acknowledge the harm that he has caused to the victims, and acknowledge the ramifications of his actions. For the aforementioned reasons, the United States respectfully requests that this Court issue a Guideline term of imprisonment followed by the maximum term of supervised release.

    Respectfully submitted,

    ROGER B. HANDBERG
    United States Attorney

By:   */s/ Lisa M. Thelwell*
      Lisa M. Thelwell
      Assistant United States Attorney
      Florida Bar No. 100809
      400 N. Tampa Street, Suite 3200
      Tampa, Florida 33602-4798
      Telephone:  (813) 274-6000
      Facsimile:   (813) 274-6358
      E-mail:      lisa.thelwell@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

    Frank McDermott, Esq.

                              */s/ Lisa M. Thelwell*
                              Lisa M. Thelwell
                              Assistant United States Attorney
                              Florida Bar No. 100809
                              400 N. Tampa Street, Suite 3200
                              Tampa, Florida 33602-4798
                              Telephone:  (813) 274-6000
                              Facsimile:   (813) 274-6358
                              E-mail:       lisa.thelwell@usdoj.gov